IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| BRO. T. HESED-EL, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. CV 119-285 RECEIVED |
| v. ) | ASHEVILLE, N.C. |
| ) | |
| JOHN DOE, et al., ) | MAY 07 2020 |
| ) | |
| Defendants. ) | Clerk, U.S. Dist. Court |
| | W. Dist. of N.C. |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS
MISSION HOSPITAL AND ROBIN BRYSON'S MOTION TO DISMISS**

*And Jesus said: "Truth is the only thing that changes not."*
HKMSTA, Chapter VII, cl. 3

### I.   INTRODUCTION

On October 7, 2019, Plaintiff filed this action (hereinafter "Complaint") against Defendants Robin Bryson and Mission Hospital, Inc. (among others), based upon their intentional torts that occurred on a daily basis from September 20, 2016 to October 6, 2016. Plaintiff's Complaint was served on the defendants within ninety (90) days of the issuance of the summons. Briefly, Plaintiff's allegations in his First Amended Complaint are as follows:

On September 20, 2016, Plaintiff, an adult male, was sunbathing in the private woods of the Biltmore Estate at or about 1:00 PM, when suddenly, he was approached by law enforcement. Plaintiff, who genuinely feared for his safety, laid down on his back, spread eagle, and responded to their questions by using sign language. The County then arrested him without probable cause and transported him to Defendant Mission Hospital for a non-emergency psychiatric evaluation. Much later that night, Buncombe County's agent clinician, Defendant Bryson, "entered into Plaintiff's room without his consent and allegedly conducted a first examination while Plaintiff was still in bed. This occurred on 9/20/16 at or about 11:01 PM." [Doc. 8, p. 31, ¶ 82].

Based upon her illicit first examination, Defendant Bryson copied and pasted her findings into an affidavit/petition which she submitted to the magistrate, recommending involuntary inpatient commitment. The "grounds" for Defendant Bryson's IVC petition were: "Patient's thought content displays delusional thinking – "we are all family in this universe. I am the god and you are my people young sister"; "laughing inappropriately" and "he is hypervigilant" (e.g. mental alertness). RB's petition contained nothing more than conclusory allegations based on her bias." [Doc. 8, ¶¶ 16-17]. Defendant Bryson also concluded without evidence that Plaintiff's mental status was "altered".

As the record shows, Defendant Bryson conducted said first examination prior to a custody order being issued by the magistrate, in violation of N.C. Gen. Stat. § 122C-261(a). After the first examination was completed, Defendant Bryson "did not provide [Plaintiff] with any information whatsoever as required by N.C. Gen. Stat. § 122C-263(g)." [Doc. 8 – Complaint Affidavit, ¶ 12(a)(3)].

Plaintiff further alleges that, during his admission to the hospital's Copestone facility, he was assaulted by another patient ("JD"); and that he was subjected to having his blood drawn and being medicated against his will by the County's other agent physicians employed by Defendant Mission Hospital. He further alleges that, during his 16-day stay at Defendant Mission Hospital's Copestone facility, he was never afforded the right to a District Court hearing concerning the attempted involuntary commitment, in violation of N.C.G.S. §122C-268.

Defendants Bryson and Mission were not engaged in *merely private conduct*. Construing the facts in the light most favorable to Plaintiff, "these allegations plausibly suggest that [Bryson] may have coordinated with [the County] to accomplish the [IVC] and the deprivations that resulted therefrom. Kline v. Cleveland Cnty., DOCKET NO. 1:19-CV-00197-MOC-WCM (W.D.N.C.

Apr. 7, 2020). Based upon these alleged facts, Plaintiff has included in his Complaint causes of actions against Defendant Bryson and Defendant Mission pursuant to 42 U.S.C. §1983 for violations of his First, Fourth, Eighth and Fourteenth Amendment rights, as well as state court causes of action for assault and battery, gross negligence and intentional infliction of emotional distress.

## II. ARGUMENT

### OPPOSITION TO MOTION TO DISMISS COMPLAINT AS TO DEFENDANTS BRYSON AND MISSION HOSPITAL PURSUANT TO RULE 10(a)

Defendants Robin Bryson and Mission Hospital have offered nothing more than pure conjecture in support of their motion to dismiss. Plaintiff's name, **T. Hesed-El**, is his legal name.

TAQI EL AGABEY MANAGEMENT is the name of a Wyoming religious non-profit corporation in good standing. Plaintiff's birth name was legally corrected on May 20, 2015 in the Superior Court of Richmond County, State of Georgia. This is clearly evidenced by Plaintiff's state court filings, which read: *"COMES NOW, I, the Patient involuntarily committed under Mission Hospital's created name, John Doe – Taqi Lel Agabey"* [Doc. 16-2, p. 4] (quotes omitted).

The signature block of that filing clearly reads: "Name in [Mission Hospital Copestone] system: Taqi Elaga Bey" [Doc. 16-2, p. 6]. It is unclear at this time why Defendant Mission Hospital registered Plaintiff in its system under the name John Doe Lilac and/or Taqi Lel Agabey. Also, it is unclear why the hospital listed a homeless shelter as Plaintiff's mailing address.

What is clear, however, is that Plaintiff's legal name is T. Hesed-El, and he is not prosecuting this action anonymously or under a pseudonym. Equally clear is that Defendants' arguments are completely without merit. If the Court considers the Notary Public's certification to

Page **3** of **18**

Case 1:19-cv-00285-MR-WCM   Document 28   Filed 05/07/20   Page 3 of 18

be insufficient proof of Plaintiff's verified identity, then Plaintiff respectfully moves the Court to schedule an evidentiary hearing so that he may present more evidence in support.

## OPPOSITION TO MOTION TO DISMISS COMPLAINT AS TO DEFENDANTS BRYSON AND MISSION HOSPITAL PURSUANT TO RULE 12(b)(1), RULE 12(b)(2), RULE 12(b)(4), AND RULE 41(b)

Defendants Robin Bryson and Mission Hospital waived their personal defenses pursuant to FRCP Rule 12(b)(2) and Rule 12(b)(4) on March 12, 2020 and March 13, 2020. As explained above, Plaintiff is not prosecuting this action under a pseudonym, and Case No. 1:19-cv-00271 was dismissed without prejudice. Therefore, the defendants' arguments pursuant to Rule 12(b)(1), Rule 12(b)(2), Rule 12(b)(4), and Rule 41(b) are without merit.

> "A dismissal for lack of standing—or any other defect in subject matter jurisdiction—must be one without prejudice, because a court that lacks jurisdiction has no power to adjudicate and dispose of a claim on the merits." Southern Walk at Broadlands Homeowner's Ass'n v. OpenBand at Broadlands, LLC, 713 F.3d 175, 185 (4th Cir. 2013). "[A] general appearance undoubtedly constitutes a waiver of such personal defenses." Bekris v. Greek M/V Aristoteles, 437 F.2d 219, 220 (4th Cir. 1971).

## OPPOSITION TO MOTION TO DISMISS COMPLAINT AS TO DEFENDANTS BRYSON AND MISSION HOSPITAL PURSUANT TO RULE 12(b)(6)

### *DEFENDANT BRYSON*

> "Before a custody order was issued, and while I was under MHI's heavy sedative, RB allegedly conducted a first examination of me without my consent. RB did not introduce herself nor inform me of the nature of her interview. Instead, while my eyes were closed in bed, RB falsified an affidavit. Then, RB merely copied the falsified facts of her affidavit and pasted them into her the first examination form. Upon information and belief, RB was not properly trained and certified to act as a state commitment examiner and RB was not authorized to conduct an examination. Upon information and belief, RB did not submit her findings to the clerk by the most reliable and expeditious means, in violation of N.C. Gen. Stat. § 122C-263(e)…This lack of adherence to protocol caused me to be further deprived of the facts necessary to understand the nature of the proceedings being used against me. I lacked contextual insight into the situation due to RB's failure to disclose." [Doc. 8 – Complaint Affidavit, ¶ 12].

Plaintiff's numerous allegations against Defendant Bryson mostly relate to her allegedly having examined Plaintiff and having thereafter submitted an Affidavit and Petition to the Magistrate for Plaintiff's involuntary commitment. Most of those actions by Defendant Bryson are alleged to have occurred on "that night" [Document 8, ¶¶ 9-15] of September 20, 2016. Plaintiff alleges that Defendant Bryson's actions were grossly negligent and founded upon her bias against his culture and religion, and in violation of his rights pursuant to 42 USC §1983 [Document 8, ¶¶ 15-19]. However, it wasn't until Jan. 2019 that Plaintiff discovered that Defendant Bryson had allegedly examined him and filed an IVC petition. *See* Doc. 8, ¶ 20. As stated in his Complaint, Plaintiff didn't discover Bryson's misconduct until *after* he obtained his medical records.

> "On September 6, 2018, I contacted MHI to obtain a copy of my medical records. [After obtaining my records], I noticed that a fair amount of the entries in the records were false and based on the religious and cultural bias of MHI's staff members. While reviewing the records, I also discovered for the first time a reference to the name: *Robin Bryson*. However, RB's IVC petition/affidavit was not contained in those records. Prior to receiving my medical records, I was not aware that RB was the one who filed an IVC petition against me nor was I aware she allegedly examined me. In response, I contacted MHI to learn more about RB's position at the hospital. MHI informed me that she was the Licensed Clinical Social Worker who submitted the petition to BC to commence IVC proceedings against me." [Doc. 8 – Complaint Affidavit, ¶¶ 4-5].

> "While I was confined in MHI's Copestone ward, a 24-hour facility as defined by G.S. 122C-252, I was not provided with an explanation or the grounds for [my] detainment; nor served with the petition to commence an involuntary commitment; nor served with any magistrate's custody order; nor served with any notice of a district court hearing. I was also deprived of my choice of counsel to represent me in the matter. Further, MHI did not provide me with a copy of my medical records upon being discharged from their facility on October 6, 2016. All state court records of the IVC proceedings were sealed and not made available to me by MHI's employees or my court-appointed attorney. Simply put, while in MHI's custody, I was not provided with any papers showing facts of my detainment. Under these circumstances, the legal injury, loss, and/or damages caused by MHI's gross negligence, malpractice, and deprivation of rights [were] not readily apparent to me." [Doc. 8 – Complaint Affidavit, ¶¶ 2-3].

Page **5** of **18**

Case 1:19-cv-00285-MR-WCM Document 28 Filed 05/07/20 Page 5 of 18

## *VIOLATION OF DUE PROCESS*

Due process includes both substantive and procedural components. *See* Snider Int'l Corp. v. Town of Forest Heights, 739 F.3d 140, 145 (4th Cir. 2014). While often discussed in tandem, they are distinct and should not be conflated. See Ibid. "At a minimum, the basic requirements of procedural due process are only that the complaining party receive notice of the reasons for the deprivation, an explanation of the evidence against [him], and an opportunity to present [his] side of the story.'" Kline v. Cleveland Cnty., DOCKET NO. 1:19-CV-00197-MOC-WCM, 21 (W.D.N.C. Apr. 7, 2020) (quotes omitted). As the record shows, Plaintiff didn't receive notice that he had been a participant of an IVC proceeding until January 17, 2019, and he was not given a fair opportunity to defend himself in a district court hearing. Moreover, this deprivation of rights is not limited to Defendant Bryson's gross misconduct. The attending physician, HD-6, also caused the deprivation of Plaintiff's rights without due process of law on or about October 5, 2016:

> "MHI's attending physician, HD-6, was also required to send a copy of her findings to the clerk of the superior court by the most reliable and expeditious means (N.C. Gen. Stat. § 122C-266(c)); and after no hearing or continuance occurred by the 10th day, HD-6 was required to release Plaintiff and notify the clerk of court by the most reliable and expeditious means (N.C. Gen. Stat. § 122C-266(d)). MHI's employees neglected to carry out those required tasks. In failing to perform those tasks, RB and HD-6 breached their duties owed to Plaintiff which caused Plaintiff to be held at MHI for 16 days without a district court hearing in violation of due process." [Doc. 8, ¶ 66]. "Any decision to terminate the proceedings because the respondent no longer meets the criteria for commitment or because a hearing cannot be held within the time required by G.S. 122C-268(a) shall be documented and reported to the clerk of superior court in accordance with G.S. 122C-266(c)." N.C. Gen. Stat. § 122C-206(f)(1).

## *ASSAULT AND BATTERY*

First, Plaintiff complained of having had his blood drawn and being sedated when he initially arrived at Mission Hospital [Document 8, ¶¶ 14, 80]. These occurred on September 20,

2016. At the time of his arrival to Mission Hospital, Plaintiff was not aware that his blood was drawn without a search warrant and prior to the issuance of a custody order. Plaintiff also was not aware that he had been sedated shortly after his arrival. These facts were not discovered until Plaintiff obtained his medical records on 10/02/2018 and the court's records on 01/17/2019.

> "After I arrived at MHI, but before any custody order was issued by the magistrate, and before an inpatient commitment was suggested, HD-1 drew my blood without my consent and without a warrant. HD-2 also secretly injected a sedative into my body. It was unreasonable, inappropriate, and not in accordance with accepted medical standards for MHI's employees to take my blood and sedate me without my consent because I was not violent or imminently dangerous to self or others. This lack of adherence to protocol caused me to lose consciousness, and while I was under MHI's heavy sedation, RB visited me in my room *late at night*." [Doc. 8 – Complaint Affidavit, ¶ 11(a)].
>
> "[T]he Sheriff abused his authority in having HD-1 seize Plaintiff's blood without a search warrant and without probable cause, in violation of the 4th Amendment to the U.S. Constitution. Upon information and belief, because there was no legitimate reason or probable cause to arrest and imprison Plaintiff, and because MHI exercised unlawful control over Plaintiff for the Sheriff prior to the issuance of a custody order, BC is liable for the false arrest and resulting false imprisonment of Plaintiff." [Doc. 8, ¶ 63]. "I didn't discover the facts of MHI's constitutional torts until after the court released the records on January 17, 2019." [Doc. 8 – Complaint Affidavit, ¶ 4].

Second, on or about Plaintiff's 10th day at Mission Hospital, hospital employees "HD-3 and HD-4" allegedly forcibly administered a sedative into Plaintiff's bloodstream while he was in "time-out" [Doc. 8, ¶¶ 23-24, 72]. The exact date of this assault is unclear. Plaintiff believes that it occurred sometime between the 11th day and the 16th day of his confinement. "Upon information and belief, at this point, Plaintiff had been in custody exceeding 10 days." [Doc. 8, ¶ 26]. Inshallah, discovery will reveal the exact date of that assault and battery.

Regardless of whether it occurred on the 10th day or the 16th day is irrelevant because Plaintiff did not possess sufficient facts during his detainment that could have revealed the forcible

injections were a violation of his rights. Under §122C-266(d), an attending physician may administer reasonable and appropriate medication and treatment that is consistent with accepted medical standards. However, given Plaintiff was not informed of the nature of his confinement nor informed that a district court hearing was pending, Plaintiff could not have known at that time that HD-3 and HD-4's forcible injections were unreasonable and inappropriate, thus constituting an assault and battery. Again, those facts became known to Plaintiff only *after* he had obtained a copy of the medical records on October 2, 2018 and the court records on January 17, 2019.

> "During my detainment, all responsible parties were careful to withhold from me any documentation that could have informed me of the facts of the IVC proceedings. MHI's staff were equally careful not to provide me with any adequate information as to reasons for my detainment and the next steps that would occur in the IVC process. MHI was careful to keep me totally in the dark." [Doc. 8 – Affidavit, ¶ 19].

Third, Plaintiff alleges that the hospital's employees negligently allowed another patient ("JD") to punch Plaintiff in the eye causing permanent damages. This allegedly occurred sometime on the day after HD-3 and HD-4 allegedly sedated Plaintiff during time out, and prior to Plaintiff being moved into the non-violent ward at the Copestone facility. *See* Document 8, ¶¶ 25-28]. Therefore, this event took place after Plaintiff had been in custody exceeding 10 days. Inshallah, discovery will reveal the exact date of that assault and battery.

### III. PLAINTIFF'S TIMELY FILED COMPLAINT

According to the defendants, Plaintiff was mentally ill when he arrived to the hospital on September 20, 2016. According to the defendants, that meant that Plaintiff's insight was *so* severely impaired that he could not be allowed into freedom or his family's care. To this point, Defendant Bryson indicated in her IVC petition that Plaintiff was not "able to contract for his safety by himself or with his family's help". [Doc. 20, p. 2]. Defendant Bryson checked the boxes in her IVC petition/affidavit indicating that Plaintiff was mentally ill, dangerous to self, and

dangerous to others, as defined by N.C. Gen. Stat. § 122C-3(11). According to the defendants, Plaintiff was under a mental disability - *non compos mentis* – from the moment of arrest, and continued as such until he was discharged from the hospital's involuntary care on October 5, 2016.

Contrary to the defendants' lofty and obviously *slanted* arguments, an allegation of an exit interview doesn't confirm that Plaintiff had a "clear grasp" that his rights were violated at the time of his detainment. At most, the statement in Plaintiff's complaint about an alleged exit interview can only serve to reveal that on October 5 or October 6, 2016 Plaintiff had finally gained enough insight about his circumstances to deduce that he'd been part of the hospital's illicit experiment.

*Assuming arguendo* that the defendants successfully restored Plaintiff's mental capacity to its "unaltered" state by the date of his exit interview, Plaintiff's complaint was still timely filed. If the exit interview occurred on October 5 or October 6, 2016, then three years from that date was October 5 or October 6, 2019, both which fell on the weekend. Therefore, the original Complaint mailed on 10/04/2019 was timely docketed on 10/07/2019 within the applicable three-year period.

### *CONTINUATION OF EVENTS EXCEPTION*

The Defendants seek to isolate Plaintiff's allegations as if each occurred in a vacuum. But in reality, the defendants knew that they were violating Plaintiff's rights on a daily basis from 09/20/2016 to 10/06/2016. Plaintiff had no way of discerning the violation of his rights until the defendants had completed their treatment and he was set at liberty to sue. "Generally [the] statute of limitations do[es] not begin to run until the claim accrues, and the claim does not accrue until the injured party is at liberty to sue or is entitled to institute an action." Mikels v. Unique Tool Manufacturing Co., Inc., CIVIL ACTION NO.: 5:06CV32, 33 (W.D.N.C. Dec. 3, 2007). For example, Plaintiff could not have possibly have known on 09/20/2016 that Defendant Bryson's secret petition would result in him being discharged from the hospital sixteen (16) days later.

The "continuation of events" exception typically arises in cases involving services or treatment (as by a lawyer or physician), along with a "relationship" between the parties that would give one party no reason to question the quality of the services or treatment…this tolling doctrine has also been applied "where there is an undertaking which requires a continuation of services, or the party's right depends upon the happening of an event in the future." Curry v. Trustmark Ins. Co., No. 13-1995, 12 n.4 (4th Cir. 2015) (citations omitted). "Here, Plaintiff was detained in MHI's unsafe environment for 16 days based on RB's false affidavit." [Doc. 8, p. 7, Introduction]. Under normal circumstances involving a medical malpractice/negligence claim, the three-year statute of limitations "begins to run from defendant's last act giving rise to the claim or from substantial completion of some service rendered by defendant." Harrold v. Dowd, 149 N.C. App. 777 (2002).

### *BLAMELESS IGNORANCE TOLLING OF FEDERAL TORT CLAIMS*

As stated in the Complaint, Plaintiff did not gain sufficient facts that Defendant Bryson's false affidavit and secret examination, *while the Sheriff maintained custody*, was the proximate cause of his 16-day confinement until the court's records were unsealed on January 17, 2019. "A tort growing out of malpractice is not to be barred by the statute of limitations when the delay in commencing the suit resulted from blameless ignorance." Zeidler v. United States, 601 F.2d 527, 529 (10th Cir. 1979). "[A] cause of action founded upon negligence, from which liability will follow, requires more than conduct." W. Prosser, Handbook of the Law of Torts, 146 (3d ed. 1964).

> "TAKE NOTICE that while in MHI's custody, the legal injuries of MHI's violations were not readily apparent. While in MHI's custody, Plaintiff was not served with any notice of a pending commitment hearing in the state district court; MHI did not provide Plaintiff with sufficient information about the IVC procedures so that he could make any informed decisions; Plaintiff was deprived of his choice of counsel to represent him; and Plaintiff was not informed of his right to counsel in the matter. The IVC records were sealed by BC's Special Proceedings division." [Doc. 8, p. 8, Notice to the Factfinder].

This is clearly a case involving the defendants' intentional acts to deprive Plaintiff of all required disclosures so as to prevent him from discovering the violations of his rights and resulting damages at the time of origin. "Under federal law, a cause of action accrues when a Plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action." Nasim v. Warden, 64 F.3d 951, 955 (4th Cir. 1995). Here, the Defendants seek to argue that the Court should apply the *antiquated* standard that the limitations began to run on 09/20/2016.

> "[T]his court recognized the possible harshness of the rule and modified its application...Therefore, until a claimant has had a reasonable opportunity to discover all of the essential elements of a possible cause of action — duty, breach, causation, damages — his claim against the [tortfeasor] does not accrue." Bridgford v. United States, 550 F.2d 978, 981 (4th Cir. 1977).

Here, Plaintiff discovered a portion of the facts of a possible cause of action against the defendants' on 10/02/2018 (date of receipt of medical records), discovered more on 01/17/2019 (date of receipt of court records), and discovered the remaining essential elements on 01/24/2019 (date the County confirmed the missing/destroyed arrest records). Therefore, as stated in Plaintiff's complaint, "[d]uring my detainment in MHI's facility, I was misled as to [the County's] involvement in the IVC proceedings. I was not in possession of the necessary facts or specific information that would have revealed the harm caused by [the defendants'] legal violations until the court released the records on January 17, 2019." [Doc. 8 – Complaint Affidavit, ¶ 18].

### *DISABILITY TOLLING OF STATE TORT CLAIMS*

State law determines the applicable statutes of limitation and method of accrual for state law claims. State law also controls the tolling provisions for a § 1983 claim. As the record shows, Defendant Bryson's affidavit, filed at the Sheriff's direction, affirmatively placed Plaintiff under two distinct disabilities, mental illness and dangerousness. *See* N.C. Gen. Stat. §35A-1101(7). According to the defendants, when Plaintiff arrived at the hospital he was incompetent and not fit

to manage his own affairs. Thus, the statute of limitations could not have begun to run until after his exit interview when the conditions for the IVC allegedly no longer existed. *See* N.C. Gen. Stat. § 1-15(c); N.C. Gen. Stat. § 1-17(a); and N.C. Gen. Stat. §1-19.

> "It is familiar learning that the statute begins to run whenever the party becomes liable to an action *if the plaintiff is under no disability*. Eller v. Church, 121 N.C. 269." Brown v. Wilson, 94 S.E. 419, (N.C. 1917) (emphasis added). "[I]n no event can the limitations period begin to run until the injured party is at liberty to sue." Hardin v. Belmont Textile Machinery Co., 355 F. App'x 717, 722 (4th Cir. 2009) (citation omitted). The statute of limitations cannot begin to run "before the plaintiff is injured." Raynor v. G4S Secure Solutions (USA) Inc., 283 F. Supp. 3d 458, 467 (W.D.N.C. 2017). *See also* White v. Scott, 101 S.E. 369 (N.C. 1919) (holding that the appearance of a disability existing at the time the right of action accrued interrupts the operation of the statute of limitations); Gudger v. R. R., 106 N.C. 481 (1890).

### *THE TORT MOST ANALOGOUS TO PLAINTIFF'S § 1983 CLAIMS*

42 U.S.C. §1983 does not hold within itself a statute of limitations, nor does it hold within itself a set accrual rule. *See* Devbrow v. Kalu, 705 F.3d 765, 767 (7th Cir.2013) (relying on Wallace to hold that there is no "single accrual rule for all § 1983 claims"). But instead, §1983 "use[s] the [accrual] rule that applies to the common-law cause of action most similar to the kind of claim the plaintiff asserts")" Owens v. Balt. City State's Attorneys Office, 767 F.3d 379, 389 (4th Cir. 2014).

> "In [Wallace v. Kato, 549 U.S. 384 (2007)], the Supreme Court addressed a § 1983 claim alleging an unconstitutional detention by police officers. The Court recognized the "standard rule" for accrual, but because it found the tort of false imprisonment to be the tort most analogous to the plaintiff's § 1983 claim… that under the common law, the statute of limitations for false imprisonment does not begin to run at the *outset* of a plaintiff's false imprisonment; rather, limitations begin to run only at the *end* of a plaintiff's false imprisonment."

Here, the parties agree that the tort most analogous to Plaintiff's § 1983 claims is false imprisonment. Because of the stigma created by the Sheriff and his direction to Defendant Bryson to commence an IVC proceeding, Plaintiff was assaulted during his 16-day false imprisonment.

## DEFENDANTS' ACTS UNDER COLOR OF STATE LAW

RB and MHI attempt to argue that they cannot be held liable under §1983 because they are merely private entities who were performing a non-mandatory medical function wholly detached from the state. Plaintiff believes such arguments by the defendants are without merit. In attempt to bolster their arguments, the Defendants cite *S.P. v. City of Takoma Park*, 134 F.3d 260, 264 n.1 (4th Cir. 1998) as the controlling law. However, the defendants are incorrect because they wrongly assume the conditions of this case are similar. But in reality, the two cases are starkly different.

First, in the *Takoma* case, the *husband* called the police which resulted in his wife being arrested by the officer and taken to the hospital for an emergency psychiatric evaluation. ***Here***, Plaintiff was arrested and taken to MHI for a non-emergency evaluation, without probable cause.

Second, the arresting Officer reported in his petition that the wife's husband called the police to report that she may commit suicide. When the officer arrived on the scene, the wife told the officer that if it was not for her kids she would end her life and that she would disappear by the end of the day. Based on the wife's admissions, the officer had probable cause to believe that she was in danger of hurting herself. ***Here***, the arresting officer didn't even bother to file an arrest report. Instead, he tasked Defendant Bryson with concocting a story that Plaintiff was dangerous.

Third, the wife was involuntarily admitted into the hospital's 24-hour mental ward that same afternoon, mere hours after the police had removed her from her home. ***Here***, Plaintiff was incarcerated by the Sheriff at the hospital for seven (7) days before being involuntarily admitted into the hospital's Copestone facility. Although Plaintiff was not held in a traditional jail or prison, his liberties were restricted just the same. Custody continued with law enforcement until Plaintiff was "transferred to a 24-hour facility. McArdle v. Mission Hosp., Inc., 804 S.E.2d 214, (2017). The state's tactical referral of… medical care to private physicians should not deprive the [patient]

of the means to vindicate [his] Eighth Amendment rights. Conner v. Donnelly, 42 F.3d 220 (4th Cir. 1994). The State of North Carolina provides funding to Missions Hospital, Inc. in order for it to satisfy the state's nondelegable duty to persons confined pursuant to state law". [Doc. 8, ¶ 38].

Fourth, North Carolina's IVC laws are not similar to Maryland's IVC laws. In Maryland, as per Section 10-622(a), the initial step of the involuntary commitment process provides that:

> A petition for emergency evaluation of an individual may be made under this section only if the petitioner has reason to believe that the individual has a mental disorder and that there is clear and imminent danger of the individual's doing bodily harm to the individual or another.

Whereas, in North Carolina, an IVC proceeding cannot be commenced on a reasonable belief, it must be commenced on the basis of the first-hand knowledge of the affiant/petitioner.

> "Anyone who has **knowledge** of an individual who is mentally ill and either (i) dangerous to self, as defined in G.S. 122C-3(11)a., or dangerous to others, as defined in G.S. 122C-3(11)b., or (ii) in need of treatment in order to prevent further disability or deterioration that would predictably result in dangerousness, may appear before a clerk or assistant or deputy clerk of superior court or a magistrate and execute an affidavit to this effect, and petition the clerk or magistrate for issuance of an order to take the respondent into custody for examination by a commitment examiner. The affidavit shall include the **facts** on which the affiant's opinion is based." N.C. Gen. Stat. § 122C-261(a) (emphasis added).

Defendant Robin Bryson's affidavit clearly shows that she lacked first-hand knowledge of Plaintiff's circumstances. Her petition shows that she was merely reciting the hearsay garnered from the arresting officer(s) who transported Plaintiff to the hospital. Moreover, Defendant Bryson did not wait until a custody order was issued by the magistrate to conduct her first examination. Instead, she conducted the examination while Plaintiff was sedated in bed, with his eyes closed, and still in the Sheriff's custody, at 11:01 PM. Her petition reads in pertinent part as follows:

> "Pt found on the Biltmore Estate by [police]…naked. He was brought to the ER for psychiatric evaluation…Pt presents with altered mental status… He is paranoid…Pts thought content displays delusional thinking – *we are all family in this universe. I am the god and you are my people*

> *young sister*...pt is unable to reliably contract for safety at this time and at further risk of decompensation without psychiatric intervention to [*sic*] endure safety." [Bryson 09/20/2016 Affidavit and Petition for IVC].

At minimum, it is clear that Defendant Robin Bryson's conclusory allegations filed on behalf of the County's Sheriff are the proximate cause of Plaintiff's 16-day false imprisonment at Defendant Mission Hospital. In his Complaint, Plaintiff alleged that she acted at the Sheriff's direction, therefore, whether Bryson submitted the petition at the direction of the Sheriff is a question of fact that must be decided by an impartial jury. Likewise, whether the hospital's other employees drew Plaintiff's blood and tranquilized him at the direction of the Sheriff is a question of fact that must be decided by an impartial jury. Even while those questions remain, it is clear that the Defendants were acting under the state's IVC laws and were not providing mere private physician services. "It is the physician's function within the state system, not the precise terms of his employment that is determinative… the physician cooperates with the state and assumes the state's constitutional obligation to provide medical care." West v. Atkins, 487 U.S. 42 (1988).

Private actions satisfy the color-of-law "element where the conduct allegedly causing the deprivation of a federal right [can] be fairly attributable to the State." Kline v. Cleveland Cnty., DOCKET NO. 1:19-CV-00197-MOC-WCM, 19-20 (W.D.N.C. Apr. 7, 2020) (quotes omitted).

> "We have recognized that there is no specific formula for determining whether state action is present. What is fairly attributable [to the state] is a matter of normative judgment, and the criteria lack rigid simplicity. While a variety of factors may bear upon the inquiry, none is individually dispositive; instead, they serve to inform an evaluation of the totality of the circumstances. Holly v. Scott, 434 F.3d 287, 292 (4th Cir. 2006) (quotes omitted) (citations omitted).

The Sheriff, and his agent Defendant Bryson, knew that *O'Connor v. Donaldson,* 422 U.S. 563 (1975) set forth the precedent that a state cannot constitutionally confine a nondangerous individual. To circumvent that decision, Bryson checked the "dangerous" boxes on the form.

"Plaintiff is informed and believes, and on that basis alleges that each employee of [Buncombe County] and [Mission Hospital] who were involved in Plaintiff's involuntary treatment and confinement acted pursuant to and within the scope of the relationships alleged above, that BC and MHI authorized, ratified, adopted, conspired, approved, controlled, encouraged, and/or aided and abetted each employee's willful misconduct. [The County and Hospital are] vicariously liable for injuries to Plaintiff's reputation and person." [Doc. 8, ¶ 89].

## IV.   STANDARD OF REVIEW

Plaintiff's right to be secure from unreasonable searches and seizures is a clearly established right. "To establish a claim under Section 1983, a plaintiff must prove that the defendant (1) deprived [him] of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was performed under color of the referenced sources of state law found in the statute." Kline v. Cleveland Cnty., DOCKET NO. 1:19-CV-00197-MOC-WCM, 19 (W.D.N.C. Apr. 7, 2020) (quotes omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." Arthur v. JP Morgan Chase Bank, NA, No. 12-12317, 24-25 (11th Cir. 2014). To determine whether a pleading adequately states a plausible claim for relief, a court must first take "note of the elements a plaintiff must plead to state a claim." Ashcroft v. Iqbal, 556 U.S. 662; Burtch v. Milberg Factors, Inc. 662 F.3d 212 (3rd Cir. 2011). Then a two-prong analysis must be conducted: First, the court must identify which of Plaintiff's statements in the complaint are factual allegations and which are legal conclusions. Second, the court must decide in the specific context of the case whether the factual allegations, if assumed true, allege a plausible claim. "Finally, the complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." Braden v.

Wal-Mart, 588 F.3d 585 (8th Cir. 2009); Garcia-Catalan v. United States, 734 F.3d 100 (1st Cir. 2013)]. Therefore, "[i]f a reasonable court can draw the necessary inference from the factual material stated in the complaint, the plausibility standard has been satisfied." Keys v. Humana, Inc., 684 F3d 605 (6th Cir. 2012)

Here, the face of the complaint clearly sets forth that Plaintiff's pleadings were filed within the three-year period and served on the County within the applicable Rule 4(m) period. If the Court dismisses this case under Rule 12(b)(6), it would be a manifest error of law and fact.

## CONCLUSION

The defendants have failed to show that they are entitled to a dismissal of this action under any rule or precedent. While on the other hand, Plaintiff has met his burden in pleading sufficient factual matter from which the court can infer that the defendants are liable for their misconduct; therefore, Defendants' motion to dismiss must be denied as a matter of law.

Respectfully this 2nd day of May, 2020 A.D.,

Plaintiff *pro se* Bro. T. Hesed-El
c/o TAQI EL AGABEY MGMT
30 N. Gould Street, Suite R
Sheridan, WY 82801
Ph: (762) 333-2075
teamwork3@gmail.com

CERTIFICATE OF SERVICE

The undersigned certifies that the defendants have been electronically served with *Plaintiff's Memorandum in Opposition to Defendants Robin Bryson and Mission Hospital's Motion to Dismiss*, by attachment to an email, to ensure delivery to:

**County of Buncombe**
c/o Attorney Curtis W. Euler
200 College Street, Suite 100
Asheville, NC 28801
Phone: (828) 250-4177
Fax: (828) 250-6040
curt.euler@buncombecounty.org

**Robin Bryson and Mission Hospital, Inc.**
c/o Attorney Richard S. Daniels
Patla, Straus, Robinson & Moore, P.A.
Post Office Box 7625
Asheville, North Carolina 28801
Telephone: (828) 255 7641
Facsimile: (828) 258 258-9222
rsd@psrmlaw.com

This 2nd day of May, 2020 A.D.

NATURAL PEOPLE LAW