# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### ASHEVILLE DIVISION
#### 1:19 CV 285 MR WCM

| | | |
|---|---|---|
| BRO. T. HESED-EL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MEMORANDUM AND |
| | ) | RECOMMENDATION |
| JOHN DOE, ROBIN BRYSON, | ) | |
| MISSION HOSPITAL, HOSPITAL | ) | |
| DOES 1-10, COUNTY OF BUNCOMBE | ) | |
| | ) | |
| Defendants. | ) | |
| ——————————————— | ) | |

This matter is before the Court on the following motions:

1. Buncombe County's Motion to Dismiss for Failure to State a Claim Upon Which Relief Can be Granted (the "County's Motion to Dismiss," Doc. 14);

2. Defendants Robin Bryson and Mission Hospital, Inc.'s Motion to Dismiss (the "Hospital Defendants' Motion to Dismiss," Doc. 19); and

3. Plaintiff's Motion for Equitable Tolling (the "Motion to Toll," Doc. 35).

## I.  Background

### A. Plaintiff's Filings

Plaintiff has made multiple filings in response to Defendants' motions. For example, in opposition to the County's Motion to Dismiss, Plaintiff filed both a "Response" and an "Opposition."  Docs. 15 & 16.  Similarly, Plaintiff filed both a response and an opposition to the Hospital Defendants' Motion to Dismiss.  Docs. 27 & 28.[1]

In light of Plaintiff's *pro se* status, the undersigned has considered all of Plaintiff's filings and the arguments contained therein. Plaintiff is advised, however, that in the future he will be expected to adhere to the Federal Rules of Civil Procedure and this Court's Local Civil Rules. In that regard, Plaintiff should file one response/opposition to any particular motion Defendants may make.

### B. Plaintiff's Allegations

This case arises out of Plaintiff's involuntary commitment ("IVC") at Mission Hospital and its Copestone facility.

---

[1] Plaintiff has taken a similar approach to the allegations in his Complaint and has attached a ten-page affidavit to his Amended Complaint that appears to supplement his allegations. Doc. 8-1. Plaintiff has also moved to file a Second Amended Complaint, see Doc. 17, and in addition to that proposed pleading (Doc. 17-1), has filed a "Supplemental Affidavit in Support of 2nd Amended Complaint."  Doc. 34.

2

In his Amended Complaint, Plaintiff asserts that while visiting the Biltmore Estate in Asheville, North Carolina on September 20, 2016, he decided to take an afternoon stroll in the woods, while nude. Plaintiff alleges that he was approached by two security guards and an "Asheville police deputy" and that "[i]n response to their sudden appearance and perceived hostility, Plaintiff immediately laid still on the ground, on his back, with his arms and legs spread in the open position to lower his chance of being shot." Doc. 8, ¶ 10. When asked if he was alright, Plaintiff "responded using sign language," specifically, a right-handed "thumbs up." Id., ¶ 10.

Plaintiff alleges that he was then taken into custody by "the Sheriff" and transported to Mission Hospital where his blood was drawn, and he was "secretly tranquilized" without his consent. See Id., ¶¶ 12, 80.

That night, Robin Bryson ("Bryson"), "a Licensed Clinical Social Worker under contract with the State of North Carolina" and an employee of Mission Hospital, "swore out a petition to commence the procedure to have Plaintiff involuntarily committed to a mental institution." Id., ¶ 15. Plaintiff alleges that the petition was based on "demonstrably false" statements in an affidavit. Id.

Bryson submitted the IVC petition "[t]he next day" (presumably September 21, 2016). Id., ¶ 20. Plaintiff appears to allege that, on the same

day, he was moved to Mission Hospital's "secured holding area for patients who have not yet been admitted into a 24-hour facility." Id.

Plaintiff states that seven days later (presumably on or around September 28, 2016) he was admitted into Mission Hospital's "Copestone ward for violent IVC patients." He also alleges that "[o]n or about the 10th day of confinement" (presumably on or around September 30, 2016), he was administered "a heavy sedative" without his consent  Id., ¶¶ 23-24.

At another point while at Copestone, Plaintiff was "violently punched" in his left eye by another patient.  Id., ¶ 27.[2]

Plaintiff alleges that his family submitted several requests to Mission Hospital for his release, but that those requests were refused.  Id., ¶ 32.  He was discharged on either October 5, 2016 or October 6, 2016.  Id., p. 4; Doc. 8-1, p. 2.  In total, Plaintiff contends that he was held against his will at Mission Hospital for sixteen days.  Doc. 8, p. 7.

### C. Relevant Procedural History

On September 23, 2019, Plaintiff, identifying himself only as "Confidential Plaintiff" or "CP," filed a complaint against "John Doe," "R.B.," "MHI," "Officer Doe," and "Paramedic Doe."  See C.P. v. John Doe, et al., No.

---

[2] At times, Plaintiff's allegations regarding dates are somewhat ambiguous. For example, he appears to allege that he was placed in the hospital's secured holding area on September 21, 2016 but later states that Mission Hospital "assumed full custody of Plaintiff on 9/26/2016."  Doc. 8, ¶¶ 20, 42.

4

1:19-cv-271-MR-WCM, United States District Court, Western District of North Carolina, Asheville Division (the "First Case"). On October 1, 2019, the First Case was dismissed by the District Court for lack of subject matter jurisdiction. First Case, Doc. 6.

On October 7, 2019, Plaintiff filed his original Complaint in the above-captioned matter naming the following defendants: 1) John Doe (the individual who allegedly assaulted him in the hospital); 2) Bryson; 3) Mission Hospital; and 4) John/Jane Does 1-10 (unidentified state actors). Doc. 1.[3]

On February 20, 2020, and prior to service on any defendant, Plaintiff filed an Amended Complaint naming: 1) John Doe; 2) Bryson; 3) Mission Hospital; and 4) Buncombe County (the "County"). Doc. 8, pp. 2-3. The introductory paragraph of Plaintiff's "Complaint Attachment" also refers to "Hospital Does 1-10" as defendants. Doc. 8, p. 7.

---

[3] Plaintiff asserts that he mailed the original Complaint on October 4, 2019. Doc. 1, p. 28.

The undersigned construes Plaintiff's Amended Complaint as containing the following claims:

| | First Amendment Free Exercise of Religion[4] | Fourth Amendment Unreasonable Search and Seizure | Fourteenth Amendment Violation of Due Process | Assault & Battery | Gross Negligence | Standard of Liability |
|---|---|---|---|---|---|---|
| John Doe | | | | X | | |
| Bryson | X | | X | | X | X |
| Mission Hospital | X | X[5] | X | | X | X |
| "Hospital Does 1-10" | | | X | X | X | X |
| County of Buncombe | X | X | X | | X | X |

On March 27, 2020, the County's Motion to Dismiss was filed. Doc. 14.

On April 24, 2020, Bryson and Mission Hospital (collectively, the "Hospital Defendants") filed their Motion to Dismiss. Doc. 19.

On May 21, 2020, Plaintiff filed the Motion to Toll. Doc. 35.

---

[4] Plaintiff's allegations in Count One are directed specifically against Bryson, Mission Hospital, and the County. See Doc. 8, ¶¶ 43, 48, 49, 54-55. The undersigned therefore does not read Count One as being asserted against the "Hospital Does 1-10."

[5] While Count Two is focused on Plaintiff's seizure by "the Sheriff," Plaintiff has also alleged that "the acts of BC and MHI's agents and employees" violated Plaintiff's Fourth Amendment rights. Doc. 8, ¶ 64.

Finally, on May 22, 2020, the undersigned directed the parties to submit supplemental briefing addressing the potential applicability of the Rooker-Feldman doctrine. Doc. 32.

## II. Subject Matter Jurisdiction

### A. The Rooker-Feldman Doctrine

The United States Supreme Court has exclusive jurisdiction over appeals from state-court judgments. See 28 U.S.C. § 1257(a); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 482 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413, 416 (1923).

As a corollary to this rule, the Rooker-Feldman doctrine prohibits "a party losing in state court . . . from seeking what in substance would be an appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights." Johnson v. De Grandy, 512 U.S. 997, 1005-06 (1994). The Rooker-Feldman doctrine is a "narrow doctrine" that "applies only when the loser in state court files suit in federal district court seeking redress for an injury allegedly caused by the state court's decision itself." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005); Davani v. Virginia Dept. of Transp., 434 F.3d 712 (4th Cir. 2006). "A claim seeking redress for an injury caused by the state-court decision itself—even if the basis of the claim was not

asserted to the state court—asks the federal district court to conduct an appellate review of the state-court decision." Davani, 434 F.3d at 719.

In Milliken v Reid, No. 1:07-115, 2007 WL 601627, at * 5 (D.S.C. Feb. 21, 2007), the court held that a complaint was subject to summary dismissal under Rooker-Feldman where the plaintiff "sought damages for federal constitutional violations by various state court judges, legal counsel, state agencies and employees, and medical facilities and personnel" in connection with an involuntary commitment proceeding in probate court. The court in Milliken explained:

> By claiming that proper statutory procedures were not followed, that false and/or insufficient evidence was presented to the probate judges, and that the probate court's judgment is "null and void," Plaintiff is, in essence, requesting this Court to review the probate court proceedings as would an appellate court.

> Id.

Similarly, in Spencer v. Bellevue Hospital, No. 11 Civ. 7149, 2012 WL 1267886, at * 5 (S.D.N.Y. April 12, 2012), the court explained that while "[n]umerous cases hold that a plaintiff may pursue a section 1983 claim arising from involuntary commitment and forced medication," "'to the extent plaintiff is attempting to assert a Section 1983 claim against these defendants based upon her belief that the involuntary commitment orders ... were illegal, such claim is barred by the Rooker–Feldman doctrine.'" (citing Rodriguez v. City of

_New York_, 72 F.3d 1051 (2d Cir.1995); quoting _Middleton v. United States_, 10 Civ. 6057, 2012 WL 394559, at *5 (E.D.N.Y. Feb.7, 2012)).

Here, Plaintiff argues that "[n]o state-court outcome or decision has been rendered relative to Plaintiff's mental health" and "therefore, the Rooker-Feldman doctrine is inapplicable to this case." Doc. 40, p. 2.

The County contends that the Rooker-Feldman doctrine is applicable to Plaintiff's constitutional claims against it and that those claims should be dismissed for lack jurisdiction. Doc. 45. The Hospital Defendants argue that any claims seeking expungement or destruction of the underlying state court orders, for damage to Plaintiff's reputation, or based upon Plaintiff not being afforded a state court hearing should be dismissed, and also that all claims against Bryson in her individual capacity should be dismissed since the alleged actions she undertook are limited to her assessment of Plaintiff and her preparation and submission of the petition that served as the basis for the initial custody order. Doc. 55.

Plaintiff's argument is at odds with the allegations in his pleadings, which indicate that at least one custody order was entered by the state court. Doc. 8, ¶ 86 (alleging that Bryson's "false conclusions…misled the magistrate in issuing a custody order"); see also Doc. 48, p. 5 ("Plaintiff complains that the defendants' constitutional violations are the cause of his injuries – not the magistrate's custody order."). Additionally, Plaintiff asserts that the state

court violated state law in granting continuances relative to his custody. See Doc. 8-1, ¶ 15. Finally, when setting forth the relief he seeks, Plaintiff states that he "demands monetary compensation and complete expungement of records of IVC proceedings." Doc. 8, p. 5.[6]

In addition, the precise nature and limits of the claims Plaintiff is attempting to assert are not entirely clear from his pleadings and arguments, and determining how those claims should be analyzed in the context of the Rooker-Feldman doctrine is challenging.

Nonetheless, and considering Plaintiff's *pro se* status, it appears that subject matter jurisdiction exists as to some of Plaintiff's claims. Specifically, Plaintiff's claims for violations of his rights under the First and Fourth Amendments and his state law claims do not appear to fit within the narrow scope of the Rooker-Feldman doctrine because, through those claims, Plaintiff does not challenge the state court commitment order itself or the effect of that order but rather the actions of Defendants, which Plaintiff contends were improper. Davani, 434 F.3d at 719 ("In his federal complaint, Davani did not

---

[6] Plaintiff has since "clarified" that he is not seeking the expungement of state court records related to the commitment proceeding and is instead seeking "the destruction of all IVC-related records not previously filed in the state court." Doc. 40, p. 5; see also Doc. 48, p. 2 (wherein Plaintiff states that "although [his] complaint did not clearly distinguish the IVC medical records from the IVC court records," he "clarified the intent of his request" in his Supplemental Brief).

allege that the state decision caused him injury; rather, he alleged that Appellees discriminated against him in violation of federal and state law.").[7]

However, Plaintiff's Fourteenth Amendment claim – in which Plaintiff alleges that state court procedures relating to the commitment proceedings were not followed – does fall within the scope of <u>Rooker-Feldman</u> and is therefore outside of this Court's subject matter jurisdiction. <u>See</u> <u>Liedtke v. Runningen</u>, Civil No. 15-3361, 2016 WL 5660455, at * 4 (D. Mn. Sept. 29, 2016), affirmed 697 Fed. Appx. 468 (8th Cir. 2017) (affirming district court's opinion that <u>Rooker-Feldman</u> barred plaintiff's claims because "whether the Dakota County Defendants followed proper procedure leading up to Liedtke's civil commitment under state law is essentially a challenge to the commitment itself…."); <u>see also</u> <u>Buck v. Greenlee</u>, No. 3:10cv540-RJC-DSC, 2011 WL 4595265, at * (W.D.N.C. April 19, 2011) ("This action falls squarely within the <u>Rooker–Feldman</u> doctrine….Plaintiff specifically seeks injunctive relief vacating all state court orders, removing all information concerning him from state records, and an investigation by an independent third party.") *recommendation adopted*, 2011 WL 4595262, *affirmed*, 465 Fed. Appx. 244 (4th Cir. 2012); <u>Metcalf v. Graham County</u>, No. 1:18-cv-274-MR-DLH, 2018 WL

---

[7] While the IVC order is a central event in Plaintiff's claims, his claims also appear to implicate actions that occurred prior to his commitment as well as the care and treatment he received while committed.

Case 1:19-cv-00285-MR-WCM   Document 63   Filed 10/09/20   Page 11 of 31

4924556, at * 3 (W.D.N.C. Oct. 10, 2018) ("the allegations and federal claims cited in the Complaint are 'a mere pretext for the real focus of the Complaint, which challenges the validity of records and proceedings of the North Carolina courts that resulted in' Susan Call obtaining custody of the Metcalfs' grandchildren.") (quoting <u>Stratton v. Mecklenburg County Dept. of Social Services, et al.</u>, 521 Fed. Appx. 278, 291 (4th Cir. 2013)).

Accordingly, the undersigned will recommend that Plaintiff's claim for "14th Amendment Violation of Due Process" be dismissed without prejudice for lack of subject matter jurisdiction.  <u>See</u> <u>Southern Walk at Broadlands Homeowner's Association, Inc. v. OpenBand at Broadlands, LLC</u>, 713 F.3d 175, 185 (4th Cir. 2013) ("A dismissal for lack of standing—or any other defect in subject matter jurisdiction—must be one without prejudice, because a court that lacks jurisdiction has no power to adjudicate and dispose of a claim on the merits.").

## B. Subject Matter Jurisdiction Over Plaintiff's Other Claims

Subject matter jurisdiction also appears to exist affirmatively for those claims that fall outside of the scope of the <u>Rooker-Feldman</u> doctrine. Plaintiff's § 1983 claims (stemming from asserted violations of his First and Fourth Amendment rights) implicate federal question jurisdiction pursuant to 28 U.S.C. § 1331.

Plaintiff also alleges that the Court may exercise diversity jurisdiction pursuant to 28 U.S.C. § 1332.  He alleges that he is not a citizen of North Carolina, Doc. 8, p. 9, ¶ 1; see also original Complaint, Doc. 1, p. 9, ¶ 1 (alleging that he is domiciled in Washington State). He additionally alleges that John Doe is believed to be a citizen of North Carolina, that Bryson is a citizen of North Carolina, that Mission Hospital is a North Carolina non-profit corporation with its principal place of business in North Carolina, and that the County is a political subdivision of North Carolina. Doc. 8, p. 9-10, ¶¶ 2, 3, 4 & 5.  Further, Plaintiff seeks damages in excess of $75,000.  Doc. 8, p. 34.

## III.    The Hospital Defendants' Motion to Dismiss (Doc. 19)

The Hospital Defendants argue that Plaintiff is improperly proceeding under a pseudonym, that all of Plaintiff's claims against Bryson and certain of his claims against Mission Hospital are time-barred, that Plaintiff has failed to state a § 1983 claim against the Hospital Defendants as they are not state actors, and that the Hospital Defendants cannot be held liable for Plaintiff's alleged failure to be given a hearing pursuant to N.C.G.S. § 122C-268 during his 16-day admission.   See Doc. 20.   Plaintiff has filed a "Response in Opposition" as well as a "Brief in Opposition" to the Hospital Defendants' Motion to Dismiss, Docs. 27 & 28, and the Hospital Defendants have replied. Doc. 29.

## A. Use of a Pseudonym

In the First Case, the District Court noted that "the use of pseudonyms in litigation undermines the public's right of access to judicial proceedings" and that Plaintiff had failed to show "extraordinary circumstances" that would allow him to proceed anonymously. See First Case, Doc. 6, pp. 11-12. The District Court further stated that Plaintiff would "be required to use his full name, and the full names of any identified Defendants, in any future pleadings." First Case, Doc. 6, p. 13.

In their Motion to Dismiss, the Hospital Defendants assert that Plaintiff has not complied with that requirement. Doc. 20, pp. 4-5. In response, Plaintiff states that his "legal name" is "T. Hesed-El," that his "birth name was legally corrected on May 20, 2015," and that he was, for reasons unknown to him, "involuntarily committed under Mission Hospital's created name, John Doe – Taqi Lel Agabey." Doc. 28, p. 3.

The information in the record indicates that Plaintiff previously sought access to his state court commitment file and that, in the context of those proceedings, the state court found:

> . . . despite the discrepancies between the name listed on Mr. Agabey's Motion, Mr. Agabey's court file, and Mr. Abagey's birth name, the Court is satisfied that Mr. Agabey is, in fact, the person whom the records sought concern, based on the independent recollection of Mr. Agabey's appointed counsel that Mr. Agabey is

the same person he interviewed when initially appointed in 2016.

Doc. 16-1, p. 2.

The Hospital Defendants rely on this finding to support their position that Plaintiff has continued to proceed in federal court under a pseudonym. However, as neither side has provided further evidence regarding Plaintiff's name and considering the allegations in the light most favorable to Plaintiff, for purposes of the Hospital Defendants' Motion to Dismiss, the undersigned will take Plaintiff at his word that he is proceeding under his legal name.

## B. Plaintiff's § 1983 Claims Against the Hospital Defendants

The Hospital Defendants argue that Plaintiff's § 1983 claims against them must be dismissed because Bryson and Mission Hospital cannot be considered state actors. See Doc. 20, pp. 11-17. In opposition, Plaintiff argues that the case relied on by the Hospital Defendants, S.P. v. City of Takoma Park, Md., 134 F.3d 260 (4th Cir. 1998), is distinguishable, and that Plaintiff has alleged the Hospital Defendants' acted on behalf of the "Sheriff." Doc. 28, pp. 13-16.

In City of Takoma, the plaintiff claimed that her civil rights were violated when she was involuntarily committed for an emergency evaluation. The Fourth Circuit affirmed the dismissal of the plaintiff's §1983 claims against the hospital, a nurse, and a doctor because those defendants were not

"state actors." Id. at 269. The court explained that a private party's conduct may constitute "state action" "(1) when there is either a sufficiently close nexus, or joint action between the state and the private party; (2) when the state has, through extensive regulation, exercised coercive power over, or provided significant encouragement to, the private actor; or (3) when the function performed by the private party has traditionally been an exclusive public function." Id.

With regard to the second test (extensive regulation by the state), the City of Takoma court noted that a review of Maryland's involuntary commitment scheme indicated it was permissive and left "a great deal of discretion to the private medical provider." Id. at 270. The court went on to conclude that the scheme, "while providing guidelines to mental health care providers, does not coerce, or even encourage, physicians to involuntarily commit individuals" and therefore dismissed the plaintiff's § 1983 claims against the hospital and its staff. Id.

North Carolina's process for involuntary commitment likewise allows a private medical provider to exercise his or her discretion in such matters. An examination of a respondent by a physician or eligible psychologist is generally required and the findings from that examination dictate certain outcomes. See N.C.G.S. § 122C-263(d); McArdle v. Mission Hospital, Inc., 255 N.C.App. 39, 48, 804 S.E.2d 214 (2017) ("Depending on the evaluation of the necessary

16

factors in a First Examination, the involuntary commitment statutes dictate certain discrete outcomes: inpatient commitment, outpatient commitment, or a termination of proceedings and a release from custody….").  The provider, however, uses his or her professional discretion in making those findings and determinations and the statutes otherwise do not encourage or coerce involuntary commitment.

Further, Plaintiff appears to recognize that the Hospital Defendants exercised their own professional judgment in his case.  See Doc. 8, ¶ 40 ("BC deferred to MHI's professional judgment…."); ¶ 54 ("BC and MHI's IVC policy and practice of granting unbridled discretion to private physicians….").

Finally, Plaintiff's allegations that Bryson acted at the "direction of the Sheriff" (Doc. 8, ¶ 15) and that Mission Hospital employees acted "as [the County's] agents to financially benefit themselves" are too conclusory to support a finding that Bryson or Mission Hospital can be considered state actors, and Plaintiff provides no applicable legal authority to support that position.   Compare West v. Atkins, 487 U.S. 42, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988) (when a state employs a physician to fulfill its constitutional obligation to provide adequate medical care to those it has incarcerated, the physician may fairly be considered a state actor).

 "[A] state is not liable for determinations that 'ultimately turn on medical judgments made by private parties according to professional

17

standards that are not established by the State.'" <u>City of Takoma</u>, 134 F.3d at 270 (quoting <u>Blum v. Yaretsky</u>, 457 U.S. 991, 1008, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982)).  Therefore, the Hospital Defendants should not be considered state actors in the context of this matter and the undersigned will recommend that Plaintiff's § 1983 claims against Bryson and Mission Hospital be dismissed for failure to state a claim.  <u>See</u> <u>Hall v. Quillen</u>, 631 F.2d 1154, 1156 (4th Cir. 1980) (court appointed physician who examined civil rights plaintiff in connection involuntary commitment proceeding was not a state actor); <u>see also</u> <u>Brown v. Latz</u>, No. 5:08cv23-V, 2009 WL 926906, at * 2 (W.D.N.C. April 1, 2009) ("The Fourth Circuit Court of Appeals has held that a health care provider who participates in detention/commitment proceedings authorized by state law is not deemed a state actor as a result of participation."); <u>Milliken</u>, 2007 WL 601627 at * 8 ("Federal circuits that have considered the issue are unanimous in ruling that a private doctor who is involved with the involuntary commitment of a person pursuant to a state statute is not a 'state actor' for purposes of § 1983 liability.").

## C. Timeliness of Plaintiff's State Law Claims Against the Hospital Defendants

The Hospital Defendants also argue that Plaintiff's claims are barred by the statute of limitations.  Because the undersigned finds that Plaintiff's § 1983 claims against the Hospital Defendants should be dismissed for lack of state

action, the undersigned has considered the issue of timeliness as it relates only to Plaintiff's state law claims against the Hospital Defendants.

### 1. Nature of Plaintiff's State Law Claims of Gross Negligence and "Standard of Liability"

In North Carolina, a "medical malpractice action" is defined as any "civil action for damages for personal injury ... arising out of the furnishing or failure to furnish professional services in the performance of medical, dental or other health care by a health care provider." N.C.G.S. § 90-21.11. "An evaluation for mental health performed in connection with an involuntary commitment falls within the definition of 'professional services' by healthcare providers." <u>Brown</u>, 2009 WL 926906, at * 2 (citing <u>Moore v. Pitt County Memorial Hosp.</u>, 139 F.Supp.2d 712, 713 (E.D.N.C. 2001)).

Plaintiff's Gross Negligence and "Standard of Liability" claims allege that defendants failed to adhere to required protocols and accepted medical/professional standards during his IVC evaluation and while he was committed. <u>See</u> Doc. 8, ¶¶ 76, 77, 80, 81, 88, 90. Therefore the undersigned will construe such claims as being medical malpractice claims.

### 2. Applicable Statutes of Limitation

"Pursuant to N.C.G.S. §§ 1-15(c) and 1-52, medical malpractice actions must be brought within three years of the last allegedly negligent act of the

physician." Vaughn v. Mashburn, 371 N.C. 428, 429, n. 1, 817 S.E.2d 370 (2018).

Here, Plaintiff recognizes that "[u]nder normal circumstances," the three-year period for medical malpractice claims begins to run from the date of the "'last act giving rise to the claim or from substantial completion of some services rendered by defendant.'" Doc. 28, p. 10 (quoting Harrold v. Dowd, 149 N.C.App. 777, 781, 561 S.E.2d 914 (2002)). However, Plaintiff argues that this period did not begin to run in his case until he was released from commitment, and that Defendants' involuntary commitment itself is evidence that he "was under a disability – *non compos mentis* – from the moment of arrest, and continued as such until he was discharged from the hospital's involuntary care...." Doc. 28, p. 9.

N.C.G.S. § 1-17(a) provides, in pertinent part, that a "person entitled to commence an action who is under a disability at the time the cause of action accrued may bring his or her action within the time limited in this Subchapter, after the disability is removed[.]" For the purposes of N.C.G.S. § 1-17(a), "a person is under a disability if the person ... is incompetent as defined in G.S. 35A-1101(7) or (8)." N.C.G.S. § 1-17(a)(3). N.C.G.S. § 35A-1101(7) provides that an "[i]ncompetent adult"

> means an adult or emancipated minor who lacks
> sufficient capacity to manage the adult's own affairs or
> to make or communicate important decisions

> concerning the adult's person, family, or property whether the lack of capacity is due to mental illness, mental retardation, epilepsy, cerebral palsy, autism, inebriety, senility, disease, injury, or similar cause or condition.

The Hospital Defendants argue that Plaintiff's position regarding his disability is contrary to his own allegations that he should never have been detained or committed in the first place. However, there appears to be no dispute that Plaintiff was committed for some period of time, and that commitment itself suggests the Hospital Defendants believed that Plaintiff satisfied the requirements for involuntary commitment at the time he was committed in 2016.

Thus, taking the allegations in the light most favorable to Plaintiff, and based on the current record before the Court, the undersigned finds that the three-year limitations period for Plaintiff to assert his state law claims against the Hospital Defendants began to run on the date Plaintiff was released from his commitment. Specifically, and consistent with Plaintiff's allegation that he was committed for sixteen days beginning on September 20, 2016, the undersigned will use October 6, 2016 as the date Plaintiff was released and the date his disability was removed.[8]   Accordingly, the three-year statute of limitations applicable to Plaintiff's state law claims expired on Monday,

---

[8] This finding is for purposes of the Hospital Defendants' Motion to Dismiss only and presumes that Defendant was incompetent during the entirety of his commitment.

October 7, 2019.  The filing of Plaintiff's state law clams against the Hospital Defendants on October 7, 2019 was therefore timely.

## IV.  The County's Motion to Dismiss (Doc. 14)

The County argues that Plaintiff's claims against it are barred by the statute of limitations and that, with respect to Plaintiff's state tort claims, Plaintiff has failed to allege a waiver of the County's sovereign immunity. Plaintiff has filed a "Response in Opposition" as well as a "Brief in Opposition" to the County's Motion to Dismiss.  Docs.  15 & 16.  Additionally, Plaintiff has filed the Motion to Toll.  Doc. 35.

### A. Timeliness of Plaintiff's Claims Against the County

Because this Memorandum recommends the dismissal of Plaintiff's 14th Amendment claims without prejudice for lack of subject matter jurisdiction, the undersigned has considered the timeliness of the remaining claims against the County, to wit: Plaintiff's § 1983 Claims for alleged violations of the First and Fourth Amendments and his state law claims.

#### 1.  Applicable Statutes of Limitation

As discussed above, the three-year statute of limitations applicable to Plaintiff's state law claims expired on Monday, October 7, 2019.

With respect to Plaintiff's § 1983 claims, "federal courts apply the forum state's 'most analogous' statute of limitations, generally the statute applicable to personal injury actions."  <u>Fayemi v. Offerman</u>, 99 Fed. Appx. 480, 2004 WL

1205715, at * 1 (4th Cir. 2004) (unpubl.). North Carolina has a three-year statute of limitations for personal injury actions, N.C.G.S. § 1-52(16), and therefore this limitations period applies to actions under 42 U.S.C. § 1983. Brooks v. City of Winston–Salem, 85 F.3d 178, 181 (4th Cir. 1996) ("[B]ecause the state limitations period governing a claim for damages for personal injuries applies to a § 1983 action, regardless of the allegations in the complaint, the three-year statute of limitations…controls." (internal citation omitted)); see also Battle v. Ledford, 912 F.3d 708, 713 (4th Cir. 2019).

"Although state law determines the applicable statute of limitations for § 1983 claims, federal law governs the date on which that limitations period begins to run." Owens v. Baltimore City State's Attorneys Office, 767 F.3d 379, 388 (4th Cir. 2014) (citing Wallace v. Kato, 549 U.S. 384, 388, 127 S.Ct. 1091, 166 L.Ed.2d 973 (2007)). "[T]o determine the date of accrual for a particular § 1983 claim, a court must look to the common-law tort that is most analogous to the plaintiff's § 1983 claim and determine the date on which the limitations period for this most analogous tort claim would begin to run." Owens, 767 F.3d at 389.

Here, Plaintiff's Fourth Amendment claim, which is focused on his September 20, 2016 arrest and the actions of the "Sheriff," appears to be most closely analogous to a claim for false arrest. See Rogers v. Pendleton, 249 F.3d 279, 294 (4th Cir. 2001) ("false arrest and false imprisonment claims ... are

essentially claims alleging seizure of the person in violation of the Fourth Amendment"). Plaintiff's First Amendment claim, which is focused on the improper initiation of involuntary commitment proceedings against him, appears to be analogous to a claim for malicious prosecution. Owens, 767 F.3d at 390 ("Malicious prosecution redresses injuries a plaintiff sustains as a result of a defendant's improper initiation or maintenance of formal proceedings against him.").

As with Plaintiff's state law claims, the three-year period to bring his § 1983 claims began to run at the latest on October 6, 2016, the date Plaintiff was discharged. Therefore, Monday, October 7, 2019 was the last possible date on which Plaintiff could assert his § 1983 claims against the County. Plaintiff, however, did not bring any claims against the County until February 20, 2020, when he filed his Amended Complaint. Doc. 8. Thus, unless those claims relate back to the filing of Plaintiff's original Complaint, or Plaintiff can establish that equitable tolling applies, Plaintiff's claims against the County are untimely.

### 2. Equitable Tolling (Doc. 35)

In his Motion to Toll, Plaintiff argues that "equitable tolling is appropriate as to all claims from 09/20/2016 *through* 01/17/2019" because it was not until January 17, 2019 that he was "in possession of the critical facts relative to his claims." Doc. 35, pp. 7-8.

"Equitable tolling applies only in "those rare instances where—due to circumstances external to the [Plaintiffs'] own conduct—it would be unconscionable to enforce the limitation against the [Plaintiffs]." Land v. Green Tree Servicing, LLC, 140 F.Supp.3d 539, 547 (D.S.C. 2015) (quoting Harris v. Hutchinson, 209 F.3d 325, 330 (4th Cir.2000)) (alternations in Land). The doctrine of equitable tolling has been applied when a plaintiff was prevented from asserting his or her claims by a defendant's wrongful conduct or when extraordinary circumstances beyond a plaintiff's control made it impossible for the plaintiff to file his or her claims on time. Harris, 209 F.3d at 330.

In this case, Plaintiff argues that the statutes of limitation should be deemed tolled for an extended period—approximately two years and four months, from September 20, 2016 through January 17, 2019. However, while the record indicates that Plaintiff was obtaining information during this time,[9] Plaintiff has not provided sufficient evidence to demonstrate that either Defendants' conduct or extraordinary circumstances beyond Plaintiff's control made it impossible for him to file his claims on time. Indeed, the First Case

---

[9] Plaintiff states that he received medical records from Mission Hospital on October 2, 2018 (Doc. 16, p. 2), that state court records related to his commitment proceedings were released to him on January 17, 2019 (Doc. 8-1, ¶ 4), and that he received a response to his public records request directed to the County on January 24, 2019. Doc. 16, p. 3; see also Doc. 28, p. 11.

was filed in September of 2019 and his original Complaint in this matter was filed on October 7, 2019.

Accordingly, the undersigned will recommend that "Plaintiff's Motion for Equitable Tolling Under the Principles of Disability, Continuation, and Extraordinary Circumstances" (Doc. 35) be denied.

### 3. Relation Back

Federal Rule of Civil Procedure 15(c)(1) provides, in applicable part, that an amendment relates back to the date of the original pleading when:

> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
>
> (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
>
> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

The requirements of Rule 15(c)(1)(C) "assure that the new party had adequate notice *within the limitations period* and was not prejudiced by being added to the litigation." Goodman v. Praxair, Inc, 494 F.3d 458, 470 (4th Cir. 2007) (emphasis in original). "Stated in the specifics of the Rule, an amendment relates back only when it changes a party or the naming of a party, when it arises out of the same transaction as that referred to in the original complaint, when it causes no prejudice to the new defendant in maintaining his defense,

26

and when the new defendant should have known that it was the party that would have been sued but for a 'mistake.'" Id. (internal citations omitted).

The focus of the relation-back inquiry is on the knowledge of and notice to the prospective defendant. Krupski v. Costa Crociere, 560 U.S. 538, 548, 130 S.Ct. 2485, 177 L.Ed.2d 48 (2010). "[W]hen relation back is required to satisfy the statute of limitations, the burden is on the plaintiff to prove that Rule 15(c) is satisfied." Covey v. Assessor of Ohio County, 666 Fed. Appx. 245, 248 (4th Cir. 2016) (unpubl.) (citing Goodman, 494 F.3d at 464; W. Contracting Corp. v. Bechtel Corp., 885 F.2d 1196, 1200 (4th Cir. 1989)).

"Notice may be presumed when the nature of the claim is apparent in the initial pleading and the added defendant has either a sufficient identity of interest with the original defendant or received formal or informal notice of the claim." W. Contracting Corp., 885 F.2d at 1201.

Here, Plaintiff argues that the County received constructive notice of his claims through the Hospital Defendants, on the theory that Mission Hospital and Bryson acted as the County's agents. Additionally, Plaintiff argues that the County received notice through state court proceedings that Plaintiff instituted to obtain access to his state court records. See Doc. 16, p. 11.

Plaintiff, though, has provided no evidence or persuasive authorities to support his position that the Hospital Defendants acted as the County's agents. Whether the Hospital Defendants should be considered "state actors" for

purposes of a § 1983 claim is a separate question from whether notice to the Hospital Defendants could be imputed to the County for purposes of a relation back analysis under Rule 15, and, regardless, as discussed above, the Hospital Defendants are not state actors here.

Further, the state court filings relative to Plaintiff's attempt to access his involuntary commitment documents do not indicate that the County, in that proceeding, received timely notice of the claims Plaintiff is asserting against the County in the instant matter.  It does not appear that the County was a named party in those proceedings or that the County was involved in Plaintiff's efforts to obtain access to the state court documents.  <u>See</u> Docs. 16-1 & 16-2.  In addition, Plaintiff has provided no authority for the position that notice should be imputed to the County simply because those proceedings took place in the courts of Buncombe County.

Therefore, Plaintiff has failed to meet his burden to establish that his claims against the County relate back to the filing of the original Complaint. <u>See</u> <u>Covey</u>, 666 Fed. Appx. at 248 ("Because Appellants failed to show that the assessors they sought to add as defendants had timely notice of the suit, as required by Rule 15(c), we affirm the district court's denial of their request to amend.").

## V.    Recommendation

The undersigned therefore **RECOMMENDS** that:

1. Plaintiff's claim for "14th Amendment Violation of Due Process" be **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction as to all Defendants.

2. "Plaintiff's Motion for Equitable Tolling Under the Principles of Disability, Continuation, and Extraordinary Circumstances" (Doc. 35) be **DENIED**.

3. Buncombe County's Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted (Doc. 14) be **GRANTED**, and Plaintiff's claims against the County (except for Plaintiff's claim alleging violation of the 14th Amendment against the County) be **DISMISSED WITH PREJUDICE**.

4. With respect to the Motion to Dismiss by Defendants Robin Bryson and Mission Hospital, Inc. (Doc. 19):

   a. The Motion be **GRANTED** as to Plaintiff's § 1983 claims against Mission Hospital and Bryson and that said claims be **DISMISSED WITH PREJUDICE**;

b. The Motion be **DENIED** to the extent it seeks dismissal of Plaintiff's state law claims against Mission Hospital and Bryson.[10]

Signed: October 9, 2020

W. Carleton Metcalf
United States Magistrate Judge

---

[10] In the event these recommendations are adopted, the following claims would remain: (1) Assault and Battery claim against John Doe; (2) Gross Negligence and "Standard of Liability" claims against Robin Bryson and Mission Hospital; and (3) Assault and Battery, Gross Negligence, and "Standard of Liability" claims against Hospital Does 1-10.

## Time for Objections

The parties are hereby advised that, pursuant to Title 28, United States Code, Section 636(b)(1)(C), and Federal Rule of Civil Procedure 72(b)(2), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen (14)** days of service of same.  **Responses to the objections must be filed within fourteen (14) days of service of the objections.**  Failure to file objections to this Memorandum and Recommendation with the presiding District Judge will preclude the parties from raising such objections on appeal.  See Thomas v. Arn, 474 U.S. 140, 140 (1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984).